IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD SWANN, | : | |
| Plaintiff, | : | Case No. 2:04-cv-578 |
| v. | : | Judge Holschuh |
| CITY OF COLUMBUS POLICE, *et al.*, | : | Magistrate Judge Abel |
| | : | |
| Defendants. | | |

**REPORT AND RECOMMENDATION**

This matter is before the Magistrate Judge on defendant the City of Columbus' March 3, 2006 motion for summary judgment (doc. 78). Plaintiff Edward Swann, an inmate at Orient state prison, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his civil rights when police officers used excessive force during an arrest in 2003. He pleads violations of his First, Eighth, and Fourteenth Amendment rights–including a claim that defendants acted with deliberate indifference to his serious medical needs by preventing him from receiving adequate medical attention for the injuries he suffered during the alleged assault.

Defendant the City of Columbus argues that summary judgment must be granted because Swann has failed to state a claim against the City based on federal law because *respondeat superior* is inapplicable in § 1983 cases. Swann has not pleaded a First

1

Amendment violation so this claim cannot survive.  His Eighth Amendment claim cannot survive because he was not convicted at the time the officer's allegedly assaulted him, so it was not cruel and unusual punishment.  Finally, his Fourteenth Amendment substantive due process claim cannot survive because the conduct complained of is protected by the Fourth Amendment.

**I. Facts.**

Swann filed this action claiming that police officers assaulted him following a car chase.  On March 10, 2003, at a little after 1:00 a.m., Swann was spotted trying to break into the Custom Computer Warehouse.  Swann fled the scene in a Jeep and was chased by Columbus police officers.  The chase ended after Swann ran over road spikes and crashed into a van and tree.[1]  Swann claims that Columbus police officers then physically dragged him from the car and assaulted him.  He maintains that Officer James Carsey kicked him in the forehead three to four times and Officer Jennifer Sheafer twisted his arm until his elbow "popped."  Officer Sheafer then allegedly put her hand over Swann's mouth causing him to lose consciousness.  After he regained consciousness, Officer Sheafer pulled down Swann's pants and ridiculed him while he was walking in handcuffs.[2]

---

[1] Twice during the car chase, Swann backed into police cruiser 144.  Swann argues that he did not hit this car.  However, defendants have submitted the investigative report of Sergeant Shirk and photographs of the police cruiser as well as the Jeep Swann was driving which show damage to both vehicles.

[2] Swann's portrayal of the events is in stark contrast to the events as alleged by the officers and contained in Sergeant Shirk's investigation.  Officer Carsey maintains

Swann complained to officers of a pre-existing heart condition, so officers requested medical assistance.  He was transported to Grant Medical Center for treatment.  Hospital notes state that Swann admitted to smoking crack 1-2 hours prior to receiving treatment.  Defs' Reply, Exh. A.  He also admitted, that at the end of the chase, he hit his chest into the steering wheel.  Notes also state that Swann had an abrasion on his forehead.

At 3:00 a.m., Officer Carsey contacted Sergeant Shirk to notify Shirk that they had a suspect who had resisted arrest.  The investigation reveals that Swann suffered a three inch abrasion to his left forehead.  Officer Carsey broke his left hand.

**II. The Parties' Arguments.**

Defendants argue that summary judgment is appropriate because Swann has failed to state a claim against the City of Columbus based on federal law.  To hold the City liable under § 1983, the City itself must cause the constitutional violation complained of through the implementation and use of government policy or custom.  The City cannot be held liable under a theory of *respondeat superior*.  Plaintiff cannot show that the City had a custom and/or policy in place which caused any violations to plaintiff's First, Eighth or Fourteenth Amendment rights.  In support, defendant makes

---

that after crashing the Jeep, Swann charged him.  They wrestled with one another, fell to the ground, and eventually Carsey was able to pin Swann.  Swann continued to try and wriggle free.  Carsey states that he hit Swann in the head three to five times in an effort to gain control over Swann.  Other officers began to arrive on the scene and aided Carsey in handcuffing Swann.  Carsey, as well as the reports of all the officers at the scene, state that at no time did any officer kick Swann in the head or anywhere else.

a number of arguments.

Defendant must be granted summary judgment on plaintiff's First Amendment claim because Swann has not pleaded any factual allegations in the complaint or amended complaint that establishes a First Amendment violation.  Swann's Eighth Amendment claim for cruel and unusual punishment should be dismissed because Swann had not been convicted or pleaded guilty to a crime at the time of the alleged assault by law enforcement officials.  Accordingly, the Eighth Amendment is not the proper vehicle for bringing this claim.  Swann's Fourteenth Amendment claim should also be dismissed.

Defendant argues that the Swann's claim should be brought pursuant to the Fourth and Fourteenth Amendments and not by trying to expand substantive due process analysis.  Further, there is no evidence that defendant failed to adequately train or discipline police officers.  Further, there is no evidence that defendant had a custom of failing to train officers or that it acted with deliberate indifference in failing to discipline officer misconduct.  Moreover, Swann cannot show that defendant failed to investigate or otherwise ratified the alleged misconduct of the police officers.  Sergeant John Shirk conducted a thorough investigation.  He concluded that the officers' actions were appropriate under the circumstances.  That fact that Shirk conducted an investigation and made findings adverse to Swann does not rise to the level of deliberate indifference nor can Shirk's conclusion be construed as an unwritten policy or custom held by the City.

Swann responds by stating that defendant's conduct violated his constitutional rights because the officers violently beat him during his arrest. He cites the Eighth Amendment protection against cruel and unusual punishment. He also argues that the due process of law, guarded by the Fourteenth Amendment, prohibits police officers from using excessive force during an arrest. Moreover, Swann argues that when bringing an action under § 1983, it is enough to allege a constitutional violation by someone acting under the color of state law: he does not need to identify precisely where in the constitutional right is derived.

Swann argues that the defendant officers did not receive adequate training because they only received four hours of video training on the use of excessive force and that two of the defendant officers only had one hour of video training. Further, he claims that one officer had no training on the use of excessive force. The City's gross negligence in failing to provide adequate training amounts to deliberate indifference and acquiescing in or implicitly authorizing the constitutional violations. He further maintains that he was never interviewed during the investigation by an Internal Affairs officer and/or Sergeant Shirk.

Attached to the City's reply motion, is the affidavit of Lieutenant Stephen J. Schwab and Sergeant Brian Bruce which shows that it has provided adequate training to its officers.[3] Defendant further maintains that the evidence shows it did perform an

---

[3] The evidence shows that Officer Watson (Sheafer) received 984 hours of classroom training including use of force and deadly force training. Officer Howe received over 900 hours of training including use of force training. Officer Carsey

5

adequate investigation of the incident: Swann just disagrees with the outcome. Swann attempts to support his claim by arguing that charges were never filed against him. However, at the time of his arrest on March 10, 2003, Swann represented himself to officers as David Beck, Jr. Charges were then filed against David Beck. Once Swann's true identity was revealed, the charges against Beck were dismissed. As of the date of defendant filing its reply motion, it was unclear whether charges could be re-filed naming Swann as the proper defendant. Moreover, defendant maintains that Swann was in fact interviewed in the course of the investigation. Sergeant Shirk arrived at the hospital at 4:03 a.m. following the incident and interviewed Swann at 5:15 a.m.

      With regard to Swann's allegations that the City has an established custom of illegal activity, Swann's complaint wholly fails to allege a link of alleged illegal activity and any constitutional violations. Swann has failed to sufficiently plead any allegations against the City itself, which could be used to establish a custom or policy on which municipal liability could be imposed, and since *respondeat superior* cannot be used as a basis for establishing municipal liability under § 1983, summary judgment must be granted. Lastly, defendant points out that Swann has failed to perfect service on the individual officers.

---

received 984 hours of academy training and 360 hours of field training. Officer McWorter received more than 900 hours of academy training and 360 hours of field training. Officer Moore received 960 hours of academy training and 360 hours of field training.

**III. Analysis.**

    **A. Summary Judgment Standard.**

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464,

467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Assoc., Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary

8

judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 259 (1968) (footnote omitted).

### B. Municipal Liability.

"[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). The term "knowingly acquiesced" is applied very narrowly, and liability on "knowing acquiescence" must be based on some degree of active participation, or the officials must have authorized the offending conduct. *Id.*

In order to establish municipal liability, a plaintiff must show that the municipality's custom or policy, or lack of a custom or policy, was a "moving force" behind the violation of the plaintiff's constitutional rights. *See Doe v. Claiborn County*, 103 F.3d 495, 508 (6th Cir. 1996). To establish liability, the plaintiff must show: (1) a municipal policy or custom; and (2) a connection between the policy and/or custom and the injury to the plaintiff. *Alkire v. Irving,* 330 F.3d 802, 814-15 (6th Cir. 2003).

9

### C. Eighth Amendment Violation.

Swann argues that defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment when police officers assaulted him during the course of his arrest on March 10, 2003. The City argues that the Eighth Amendment's protections do not apply prior to a defendant's conviction of a crime.

It is important to distinguish a Fourth Amendment claim for excessive force from an Eighth Amendment claim for cruel and unusual punishment. Protections against cruel and unusual punishment, as protected by the Eighth Amendment, do not arise until after arrest and a formal adjudications of guilt by the state. *Davenport v. Simmons*, 192 F. Supp. 2d 812, 821 (W.D. Tenn. 2001). Swann had not been formally adjudicated at the time of his arrest on March 10, 2003, so his claim for excessive force cannot be brought pursuant to the Eighth Amendment and the City is entitled to summary judgment on this claim. However, Swann has also pleaded violations of his Fourteenth Amendment rights.

When a right is protected by a specific constitutional amendment, the proper analysis requires looking to the governing constitutional amendment -not analysis under the due process clause of the Fourteenth Amendment. *Id.* at 818. It is the Fourth Amendment that protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. It also protects against the use of unreasonable force by officers in making a seizure. *Id.* at 820. However, the Fourth Amendment's protections are applicable to the states

10

through the Fourteenth Amendment.

Swann has not pleaded a Fourth Amendment violation. However, his complaint and amended complaint state that excessive force was used when officers made the arrest in March 2003. Under the Federal Rules of Civil Procedure, a plaintiff only needs to plead a "short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a). The City should be aware that Swann was attempting to plead an excessive force claim pursuant to the Fourth Amendment rather than the Eighth Amendment. The City has not provided any argument for dismissing Swann's claim for the use of excessive force. However, Swann has failed to provide any evidence that the City has a policy and/or custom in place that caused the injury to him and despite the City's failure to argue for summary judgment on the excessive force claim, the City still argued that Swann had failed to state a claim. At this point, Swann had the duty to put forth evidence that showed that there was a genuine issue of law or fact, which he failed to do. The City is entitled to summary judgment on this claim.

**D. Failure to Train.**

Swann argues that the City of Columbus is liable for the actions of its officers because it failed to provide adequate training to the officers on the use of force. The first task in any municipal liability suit brought pursuant to 42 U.S.C. § 1983 is to determine "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[A] municipality is liable for failure to train its police force, where the plaintiff

11

proves that the municipality acted recklessly, intentionally, or with gross negligence" and "that the lack of training was so reckless or grossly negligent that deprivations of persons' constitutional rights were substantially certain to result." *Id.* at 382-83. (punctuation omitted) (citation omitted). Further, a municipality is only liable for a failure to train in very limited circumstances. For liability to arise, "the failure to train [must amount] to deliberate indifference to the rights of the persons with whom the police come into contact." *Id.* at 388. Therefore, "a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." *Id.* at 389 (citation omitted) (punctuation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality- a 'policy' as defined by our prior cases- can a city be liable for such a failure under § 1983." *Id.*

A municipality has a policy of providing inadequate training when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Further, the plaintiff must also be able to show that the inadequacy in training actually led to the injury. *Id.* at 391. This is the necessary causal link as mentioned earlier. Consequently, deliberate indifference for a municipality's failure to train may only exist when "the city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392.

Defendant has submitted the affidavits of Stephen J. Schwab, a lieutenant in the

12

Basic Training Section of the City's Training Academy.  Schwab Aff. ¶ 1.  It states that James Carsey, Jennifer Watson, formerly Jennifer Sheafer, Isaac Moore, James Howe and Michael McWhorter received 960 or more hours of training at the Police Academy and 360 hours of field training.  *Id.* at ¶ 3, 4, 5, 7, 8, 9, 10, and 11.  The training program offers training in the use of force including the use of deadly force.  *Id.* at ¶ 12.  The affidavit also states that the Columbus Policy Academy meets or exceeds all of the State of Ohio's police academy requirements.  *Id.*  After completing basic training, officers receive "regular in-service training."  *Id.* at ¶ 14.

      Carsey's training records show that he has completed use of force training, arrest, search, and seizure training, situational arrest, search and seizure training, and field force training among numerous other training programs.  Jennifer Watson completed the same training courses.  James Howe's records show that he has completed a number of training courses including several defensive tactics training courses.  Michael McWhorter' training records show, among numerous other courses, the completion of situational arrest, search and seizure, several defensive tactics courses, and arrest and control team training.  Isaac Moore completed two use of force training classes as well as two titled arrest, search and seizure, two field force programs, and numerous other courses including several on defensive tactics.

      Defendant has also submitted the affidavit of Brian A. Bruce.  It states that he is a Sergeant for the Columbus Division of Police, Training Bureau, Defensive Tactics Unit.  Bruce Aff. ¶ 2.  It further states that the Defensive Tactics Training course trains officers

on the use of force while making arrest including law and policy changes.  In addition to this evidence on training, defendant has submitted the City's policy statement on protecting person's constitutional rights.

Attached to the affidavit of James G. Jackson is the Mission and Values Statements of the Columbus Division of Police.  It states that "Division personnel *shall* obey the Constitution of the United States" as well as all other federal laws.  Further, it states that "Division personnel *shall* use force only in accordance with law and Division procedures."

Swann argues that the City was deliberately indifferent to his constitutional rights as shown by what little training the officers received on the use of force.  Swann then cites the training reports, but only refers to the course entitled "Use of Force."  The evidence and affidavit of Schwab and the training records show that the officers were repeatedly trained on the use of force in making arrests.  The affidavit of James Jackson states that it was the policy and custom of the Columbus police department to obey persons' constitutional rights.  Finally, Swann has failed to identify any connection between the failure of the officers training and the officers alleging assaulting him.  Municipal liability pursuant to 42 U.S.C. § 1983 on a claim of failure to train is only found in very narrow circumstances.  Because Swann has failed to plead a connection between the allegedly inadequate training and the alleged assault, he has not raised a genuine issue of law or fact.  Swann's claim for the City's alleged failure to train should be dismissed.

**E. Failure to Investigate and Discipline the Officers.**

Swann next argues in his response to the motion for summary judgment, that the City's failure to investigate and discipline the alleged misconduct may be grounds for finding that the City has a policy or custom of violating a suspect's rights.

A municipality may be liable for its failure to investigate and/or discipline its officers when the "[f]ailure by a municipality to investigate or discipline its police officers . . .permit[s] an inference that the misconduct which injured the plaintiff was pursuant to an official policy or custom." *Hullett v. Smiedendorf*, 52 F. Supp. 2d 817, 825 (W.D. Mich. 1999) (punctuation omitted) (quoting *Tompkins v. Frost*, 655 F. Supp. 468, 472 (E.D. Mich. 1987)).  Further, for there to be liability, there must be a causal connection between the failure to investigate and/or discipline and the alleged constitutional violations.

> The strength of the inference which could be drawn from a failure to investigate would vary from case to case depending on the nature of the notice given to the municipality and whether the municipality intentionally or recklessly failed to take appropriate action.  In the failure to discipline context a plaintiff must show a history of widespread abuse that has been ignored by the city.

*Id.* (citations omitted) (punctuation omitted).

Defendant has submitted the affidavit of Sergeant John M. Shirk.  He states that Officer Carsey contacted him at approximately 3:00 a.m. on March 10, 2003 notifying

15

Shirk of "an action response to resistance" during Swann's arrest.[4] Swann had been observed trying to break into the Custom Computer Warehouse. Shirk Aff. ¶ 4. At the end of the police car chase, Swann crashed the Jeep he was driving. *Id.* at ¶ 5. Shirk was called to the crash location to begin an "Intra-Departmental Action Response Investigation." *Id.* at ¶ 5. Shirk was not present when Swann was apprehended. *Id.* at ¶ 6. Shirk states that as part of his investigation he interviewed Officers Carsey, Howe, Sheafer, McWhorter, and Moore. He also interviewed Beck, who was later identified as Swann. Shirk concluded

> My investigation revealed that the Officers' action responses were reasonable in light of the facts and circumstances surrounding the Plaintiff's criminal activity, including the pursuit and the struggle that ensued during his apprehension.

Shirk Aff. ¶ 11.

Swann has not pleaded any allegation of "widespread abuse" by the City. Rather, the evidence shows that the City undertook an investigation that cleared the officers of any alleged wrongdoing. Swann has not pleaded or produced evidence that shows that the City had a policy or custom of ignoring the complaints, that the City failed to investigate complaints, or that it had previous complaints about the defendant officers in the past and that the City somehow failed to investigate or discipline these officers. Rather, the evidence shows that Sergeant Shirk completed an investigation regarding the circumstances surrounding the arrest of plaintiff. Swann has not pleaded

---

[4] On the date of the arrest, Swann had identified himself to the arresting officers as David Beck Jr. and it is Beck's name that is contained in Shirk's report.

16

or provided evidence that the investigations undertaken by the City's investigators are sham or if that the investigations are part of the City's custom or policy of violating persons' constitutional rights. Plaintiff's claim that the City ratified the conduct of the officers because it failed to investigate and/or discipline the officers should be dismissed.

### F. Conspiracy Claims.

Defendant argues that it must be granted summary judgment on plaintiff's claim made in his response to defendant's motion for summary judgment, that the City engaged in a conspiracy to deprive Swann of his constitutional rights. In plaintiff's complaint and amended complaint, Swann argues that the defendant officers engaged in a conspiracy to cover up the civil rights violations made during his arrest. However, Swann did not make any allegations that the City was involved in the conspiracy. However, in his response to defendant's motion for summary judgment, without any particularity, Swann makes allegations that the City was somehow involved in the conspiracy. As already stated, a city may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*. *Hullett*, 52 F. Supp. at 824. For there to be municipal liability, the plaintiff must establish a municipal policy or custom that is causally connected to the constitutional violations. *Id.* Plaintiff has failed to raise a genuine issue of law or fact. Plaintiff's claim of conspiracy against the City should be dismissed.

### G. Remaining Claims.

Swann also alleges a First Amendment violation in his complaint. However, he

fails to support this claim with any detail–only that he suffered a First Amendment violation. At the summary judgment stage, Swann must present evidence to support his claim. He has failed to do so, the City should be granted summary judgment on this claim.

Swann also alleges that defendant acted with deliberate indifference to his medical needs; but again, he fails to support this claim with any evidence. Rather the evidence submitted by the City shows that after his arrest, medics were called to the scene to treat Swann for a pre-existing heart condition. He was then taken by ambulance to Grant Medical Center for treatment. Swann has not provided any evidence that contradicts these facts. The City should be granted summary judgment on Swann's claim that defendants acted with deliberate indifference to his medical needs.

### H. Proper Service.

Defendants argue that Swann has failed to effectuate service on the defendant officers. These officers were not named as defendants in his July 6, 2004 original complaint, which listed John Doe officers. However, in Swann's February 14, 2005 amended complaint, the following officers were identified as defendants: James Carsey; James Howe; Jennifer Shaefer; Michael McWhorter; Isaac Moore; Robert Beihl; and David Aurigemma. Am. Compl. ¶¶ 1-6. Rule 4(m), Fed. R. Civ. P., requires the plaintiff to perfect service within 120 days of the filing of the complaint or the court may dismiss the action. Since the filing of Swann's amended complaint, the docket does not

18

reflect that at any time the defendant officers have ever been served with a copy of the summons and complaint.  Accordingly, the claims against these defendants should be dismissed unless Swann can show within eleven (11) days of the date of this order why defendants should not be dismissed without prejudice pursuant to 4(m), Fed. R. Civ. P. for failure to obtain service on them.

### IV. Conclusion.

I **RECOMMEND** that the City of Columbus' March 3, 2006 motion for summary judgment (doc. 78) be **GRANTED** and that the City of Columbus be **DISMISSED** as a defendant.  Further, pursuant to Rule 4(m), Fed. R. Civ. P, plaintiff Edward Swann is **DIRECTED** to **SHOW CAUSE**  within eleven (11) days of the date of this Order why the remaining defendants should not be dismissed from this action for failure to perfect service within 120 days of filing the amended complaint.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);

*See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/ Mark R. Abel
United States Magistrate Judge
